# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID URIARTE, an individual; CELESTINA URIARTE, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-1 ASSET BACKED CERTIFICATES, SERIES 2006-1, a National Association; POWER DEFAULT SERVICES, INC., a Delaware Corporation; DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 11-cv-2082 – IEG (WVG) <br><br> ORDER REMANDING ACTION TO STATE COURT |

On September 9, 2011, Defendants removed this action, alleging this Court had original jurisdiction under 28 U.S.C. § 1332, based on complete diversity among the parties. On September 22, 2011, the Court issued an Order to Show Cause why this action should not be remanded for lack of subject matter jurisdiction. Defendants responded to the Court's order on September 30, 2011. Having considered Defendants' response, and for the reasons set forth below, the Court concludes there is not complete diversity among the parties, and therefore no diversity jurisdiction exists. Accordingly, the Court hereby **REMANDS** this action to state court.

## BACKGROUND

Plaintiffs filed this action in the San Diego Superior Court on July 19, 2011. [Doc. No. 1.] On September 9, 2011, Defendants removed the action to this Court on the basis of diversity jurisdiction. [*Id.*] Plaintiffs filed their First Amended Complaint ("FAC") on October 6, 2011.

[Doc. No. 8.] The FAC does not allege any federal causes of action. [*See generally id.*]

## LEGAL STANDARD

Unless otherwise provided, a civil action filed in state court may be removed to a federal district court if that court has original jurisdiction based on either "diversity of citizenship" or a "federal question." *See* 28 U.S.C. § 1441(a); *see also id.* §§ 1331, 1332. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). As such, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*; *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam).

## DISCUSSION

Defendants removed this action on the basis of diversity jurisdiction. "Jurisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000."[1] *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam); *see also* 28 U.S.C. § 1332(a). For complete diversity to be present, all plaintiffs must have citizenship different from all defendants. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 n.3 (1996). In this case, it is undisputed that Plaintiffs are citizens of California. (*See* Notice of Removal, at 3 [Doc. No. 1]; FAC ¶¶ 1-2 [Doc. No. 8].) It is also undisputed that Defendant Power Default Services is a Delaware corporation with its principal place of business in Texas, (Notice of Removal, at 4), and is therefore a citizen of both Delaware and Texas. *See* 28 U.S.C. § 1332(c)(1). Finally, it is undisputed that Defendant Wells Fargo Bank, N.A., a national banking association, has its main office in South Dakota, (Notice of Removal, at 3-4), and therefore is a citizen of that state. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307, 318 (2006).

---

[1] Here, the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* FAC, Ex. B (listing loan in the amount of $577,600.00); *see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

1  The sole question before the Court is whether Wells Fargo is *also* a citizen of California, where it
2  has its principal place of business,[2] and whether, as a result, complete diversity is lacking.

3  "All national banking associations shall, for the purposes of all other actions by or against
4  them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348.
5  Most recently, the Supreme Court construed the word "located" in *Wachovia Bank v. Schmidt*, 546
6  U.S. 303. In *Wachovia*, the Supreme Court rejected an approach that would consider a national
7  banking association a citizen of every state in which it maintains a branch. *Id.* at 307. Rather, the
8  Supreme Court concluded that, for purposes of § 1348, "a national bank . . . is a citizen of the State
9  in which its main office, as set forth in its articles of association, is located." *Id.*

10  Contrary to Wells Fargo's contention, however, *Wachovia* left open the possibility that a
11  national bank may *also* be a citizen of the state in which it has its principal place of business.
12  First, this precise issue was not before the Supreme Court, and therefore the Court expressly
13  declined to address it. *See id.* at 315 n.8 ("Other readings mentioned in Court of Appeals opinions
14  are the bank's principal place of business and the place listed in the bank's organization certificate.
15  Because this issue is not presented by the parties or necessary to today's decision, we express no
16  opinion on it." (internal citations omitted)). Second, the Supreme Court alluded to the possibility
17  that, to reconcile 28 U.S.C. § 1348, governing national banks, and 28 U.S.C. § 1332(c)(1),
18  governing corporations in general, a national bank might have to be considered a citizen of the
19  state in which its main office is located *and* the state of its principal place of business. *See id.* at
20  317 n.9 ("To achieve complete parity with state banks and other state-incorporated entities, a
21  national banking association would have to be deemed a citizen of both the State of its main office
22  and the State of its principal place of business." (citations omitted)).

23  Therefore, two approaches have emerged. On the one hand, in cases predating *Wachovia*,
24  the Fifth Circuit and the Seventh Circuit unanimously concluded that for purposes of diversity

---

[2] Wells Fargo does not contest that its principal place of business is in San Francisco, California. *See Mount v. Wells Fargo Bank, N.A.*, No. CV 08-6298 GAF (MANx), 2008 WL 5046286, at *1 (C.D. Cal. Nov. 24, 2008) (finding that Wells Fargo's principal place of business was in San Francisco, California (citing cases)); *see also* Answer to Complaint in *Miles v. Wells Fargo Mortg. Co.*, No. 06-cv-1991, ¶ 5 (N.D. Cal. July 31, 2006) (Wells Fargo's answer to a complaint, admitting that "Wells Fargo Bank, N.A. has its principal place of business in San Francisco").

1 jurisdiction, a national bank is a citizen of both the state in which its main office is located and the
2 state of its principal place of business.³ *See Horton v. Bank One, N.A.*, 387 F.3d 426, 436 (5th Cir.
3 2004) ("We hold that the definition of 'located' is limited to the national bank's principal place of
4 business and the state listed in its organization certificate and its articles of association."); *Firstar*
5 *Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir. 2001) ("[W]e hold that for purposes of 28 U.S.C. §
6 1348 a national bank is 'located' in, and thus a citizen of, the state of its principal place of business
7 and the state listed in its organization certificate."). On the other hand, the Eighth Circuit recently
8 held, in a 2-1 decision, that a national bank is a citizen of only the state where its main office is
9 located.⁴ *See Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 710 (8th Cir. 2011)
10 ("[W]e reject appellants' claim that Wells Fargo is a citizen of both South Dakota and California . .
11 . ."). Judge Murphy dissented from the Eighth Circuit's decision, indicating that he would have
12 followed the approach of the Fifth and Seventh Circuits. *See id.* at 716-17 (Murphy, J., dissenting)
13 ("I would hold that national banks are citizens of the state where their principal place of business
14 is located in addition to the state in which their main office is located.").
15 Upon careful examination, the Court believes the approach advanced by the Fifth and
16 Seventh Circuits, as well as by Judge Murphy's dissent in *WMR*, is more consistent with § 1348's
17 legislative history and the Supreme Court's decision in *Wachovia*. Accordingly, the Court
18 concludes that for purposes of diversity jurisdiction, a national bank is a citizen of both the state in
19 which its main office is located as well as the state of its principal place of business.

---

³ Post-*Wachovia*, a number of district courts in California have followed this approach, finding *Firstar* and *Horton* persuasive. *See, e.g.*, *Guinto v. Wells Fargo Bank*, No. CIV. S-11-372 LKK/GGH, 2011 WL 4738519, at *3 (E.D. Cal. Oct. 5, 2011); *Stewart v. Wachovia Mortg. Corp.*, No. CV 11-06108 MMM (AGRx), 2011 WL 3323115, at **5-6 (C.D. Cal. Aug. 2, 2011); *Goodman v. Wells Fargo Bank, N.A.*, No. CV 11-2685-JFW (RZx), 2011 WL 2372044, at *2 (C.D. Cal. June 1, 2011); *Gutterman v. Wachovia Mortg.*, No. CV 11-1611 GAF (CWx), 2011 WL 2633167, at *1 (C.D. Cal. Mar. 31, 2011); *Saberi v. Wells Fargo Home Mortg.*, No. 10CV1985 DMS (BGS), 2011 WL 197860, at *3 (S.D. Cal. Jan. 20, 2011); *Mount*, 2008 WL 5046286, at *2.

⁴ A number of district courts in California have embraced this approach post-*Wachovia*. *See, e.g.*, *Silva v. Wells Fargo Bank N.A.*, No. CV 11-3200 GAF (JCGx), 2011 WL 2437514, at *2 (C.D. Cal. June 16, 2011); *Tse v. Welss Fargo Bank, N.A.*, No. C10-4441 THE, 2011 WL 175520, at *2 (N.D. Cal. Jan. 19, 2011); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1027-28 (N.D. Cal. 2010); *Cal. ex rel. Bates v. Mortg. Elec. Registration Sys., Inc.*, No. 2:10-cv-01429-GEB-CMK, 2010 WL 2889061, at *1 (E.D. Cal. July 21, 2010); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1123-24 (N.D. Cal. 2010); *Peralta v. Countrywide Home Loans, Inc.*, No. C 09-3288 PJH, 2009 WL 3837235, at **4-5 (N.D. Cal. Nov. 16, 2009).

**I.      Jurisdictional parity**

The statute governing the state of citizenship for national banking associations, such as Wells Fargo, is 28 U.S.C. § 1348, enacted in 1948, which states, in its entirety:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
>
> All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

At issue is the precise meaning of the word "located."  In *Wachovia*, the Supreme Court recognized that "'located' is not a word of 'enduring rigidity,' but one that gains its precise meaning from context."  546 U.S. at 307 (internal citation omitted).  The Supreme Court, therefore, considered the unique historical circumstances giving rise to Congress's adoption of § 1348.

As the Supreme Court explained in *Wachovia*, "[w]hen Congress first authorized national banks in 1863, it specified that any 'suits, actions, and proceedings by and against [them could] be had' in federal court."  546 U.S. at 309 (quoting Act of Feb. 25, 1863, § 59, 12 Stat. 681) (second alteration in original).  "National banks thus could 'sue and be sued in the federal district and circuit courts solely because they were national banks, without regard to diversity, amount in controversy or the existence of a federal question in the usual sense.'"  *Id.* at 309-10 (quoting *Mercantile Nat'l Bank of Dallas v. Langdeau*, 371 U.S. 555, 565-66 (1963)).  This gave national banks an advantage over the state banks, which—like other state-incorporated entities—could sue in federal court only on the basis of diversity of citizenship or the existence of a federal question.  *Id.* at 310.  Congress ended national banks' automatic qualification for federal jurisdiction in 1882, thereby placing national banks "'on the same footing as the banks of the state where they were located.'"  *Id.* (quoting *Leather Mfrs. Bank v. Cooper*, 120 U.S. 778, 780 (1887)).

In 1887, Congress replaced the 1882 provision and for the first time used the "located" language contained in § 1348 today.  *Id.*  The 1887 provision stated in relevant part:

> "[A]ll national banking associations established under the laws of the United States

>shall, for the purposes of all actions by or against them, real, personal or mixed, and all suits in equity, *be deemed citizens of the States in which they are respectively located*; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State."

*Id.* at 310-11 (quoting Act of Mar. 3, 1887, § 4, 24 Stat. 554–555) (emphasis and alteration in original). "Like its 1882 predecessor, the 1887 Act 'sought to limit ... the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks were so limited.'" *Id.* at 311 (quoting *Langdeau*, 371 U.S. at 565-66). The provision underwent more changes, before Congress finally enacted § 1348 in its current form as part of the 1948 Judicial Code revision. *See id.* at 311-12 (citing Act of June 25, 1948, 62 Stat. 933).

Although the language and codification of these statutes changed over time, the Supreme Court has consistently interpreted them to have placed the national banks on the same footing as the state banks and other corporations. *See Cooper*, 120 U.S. at 780 (noting that the 1882 provision was intended "to put national banks on the same footing as the banks of the state where they were located for all the purposes of the jurisdiction of the courts of the United States"); *Petri v. Commercial Nat'l Bank*, 142 U.S. 644, 650-51 (1892) ("No reason is perceived why it should be held that congress intended that national banks should not resort to federal tribunals as other corporations and individual citizens might."); *Cont'l Nat'l Bank v. Buford*, 191 U.S. 119, 123-24 (1903); *Langdeau*, 371 U.S. at 565-66 (noting that both the 1882 and 1887 provisions "sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited"); *Wachovia*, 546 U.S. at 311, 318.

**II.   *Firstar* and *Horton***

In *Firstar*, the Seventh Circuit concluded that the above principle of jurisdictional parity counseled in favor of treating national banks just as one would treat state banks and other corporations.[5] 253 F.3d at 993-94. Under 28 U.S.C. § 1332(c)(1), a corporation is considered to be a citizen of "any State by which it has been incorporated and of the State where it has its

---

[5] Wells Fargo suggests that *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), overruled *Firstar*. It does no such thing; it does not even mention *Firstar*. *See WMR*, 653 F.3d at 718 n.9 (Murphy, J., dissenting) ("Although [*Hicklin*] contains dicta referencing *Wachovia*, Judge Flaum, the author of *Firstar*, was on the panel and would surely have addressed any contrary holding.").

principal place of business." Accordingly, to provide national banks with access to federal courts equal to that enjoyed by state banks and other corporations, the Seventh Circuit concluded that a national bank should similarly be considered a citizen of the state listed in its organization certificate and of the state of its principal place of business.[6] *Firstar*, 253 F.3d at 994.

In *Horton*, the Fifth Circuit followed suit, and similarly relied on the principle of jurisdictional parity to conclude that Congress intended for national banks and state banks to be treated similarly for purposes of diversity jurisdiction. 387 F.3d at 431. Thus, the Fifth Circuit agreed that a national bank should be considered a citizen of the state listed in its organization certificate and its articles of association and the state of its principal place of business. *Id.* at 436.

The Court finds the reasoning of *Firstar* and *Horton* persuasive. In *Wachovia*, the Supreme Court endorsed reliance on jurisdictional parity when interpreting 28 U.S.C. § 1348. Although reserving judgment as to the question presently before the Court, the Supreme Court in *Wachovia* nonetheless relied on jurisdictional parity in determining whether a national bank is a citizen of every state in which it has a branch. 546 U.S. at 311, 318. In rejecting that argument, the Supreme Court noted that it would create an "anomalous result" by "severely constrict[ing] national banks' access to diversity jurisdiction as compared to corporations generally." *Id.* at 317. Likewise, in this case, accepting Wells Fargo's argument would create an opposite "anomalous" result. Whereby any state bank or other corporation is deemed to be a citizen of two states (the state where it is incorporated and the state of its principal place of business), a national bank would be deemed a citizen of *only* the state where its main office is located. This would allow a national bank access to diversity jurisdiction to a greater extent than a similarly situated state bank or any other corporation. Such outcome would be contrary to the principle of jurisdictional parity underlying Congress's enactment of 28 U.S.C. § 1348 and emphasized by the Supreme Court in *Wachovia*. Accordingly, to avoid such an "anomalous" result, the Court concludes that for purposes of diversity jurisdiction, a national bank is "located" both in the state designated in its articles of association as its main office, *see Wachovia*, 546 U.S. at 318, as well as the state of its

---

[6] Seeing that a national bank is not incorporated by any state, but instead by the federal government, the Fifth Circuit used the state listed in the national bank's organization certificate because it "serves a function similar to a certificate of incorporation." *Firstar*, 253 F.3d at 993-94.

principal place of business, *see Horton*, 387 F.3d at 436; *Firstar*, 253 F.3d at 994.

**III.    Wells Fargo's arguments**

Wells Fargo raises a number of arguments as to why the Court should reject the approach taken by the Fifth and Seventh Circuits. None of those arguments are persuasive, however.

A.    The concept of "principal place of business"

Wells Fargo's main argument is that both *Firstar* and *Horton* are flawed because they "overlook the strong legislative history and intent imposed by Congress." (Wells Fargo's Response to OSC, at 5.) In support, Wells Fargo relies predominantly on a decision by the District Court for the Southern District of New York. *See Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006). The district court in *Excelsior* observed that in 1948, when the current version of 28 U.S.C. § 1348 was created by the Act of June 25, 1948, a state bank was a citizen of only one state—the state in which it was incorporated. *Id.* at 318-19. "The concept of 'principal place of business' as a test for corporate citizenship did not arise until 1958, when 28 U.S.C. § 1332(c)(1) was first enacted." *Id.* at 319 (citing Act of July 25, 1958, Pub. L. No. 85-554, 72 Stat. 415). As such, according to the district court in *Excelsior*, "neither the statutory text nor the legislative history support reading the term 'located' in § 1348 to incorporate by reference a concept that did not exist until ten years later." *Id.* at 322.

The Court respectfully disagrees with the above conclusion because it ignores the principle of jurisdictional parity that the Supreme Court relied upon in *Wachovia* to interpret the meaning of the term "located" in § 1348. As already noted, the Supreme Court has consistently interpreted § 1348 to have placed national banks on the same footing as state banks and other corporations. *See Cooper*, 120 U.S. at 780; *Petri*, 142 U.S. at 650-51; *Buford*, 191 U.S. at 123-24; *Langdeau*, 371 U.S. at 565-66. Indeed, five years after § 1332(c)(1) was enacted, the Supreme Court reaffirmed that both the 1882 and 1887 revisions to the statute governing national banks "sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts *to the same extent* to which non-national banks are so limited." *See Langdeau*, 371 U.S. at 565-66 (emphasis added). Although Congress made no changes to § 1348 in 1958, Congress is presumed to have been aware of the settled judicial interpretation of § 1348 and therefore is presumed to have

intended the changed test in 28 U.S.C. § 1332(c)(1) to apply equally to national banks. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well." (citation omitted)); *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." (citations omitted)).

Moreover, Wells Fargo's argument that "principal place of business" as a test for corporate citizenship did not arise until the enactment of § 1332(c)(1) in 1958 appears to be factually inaccurate. In 1943, the Ninth Circuit interpreted the word "located" in a predecessor statute to § 1348 in *American Surety Company v. Bank of California*, 133 F.2d 160 (9th Cir. 1943).[7] Reasoning that the citizenship of a corporation was "fixed by its principal place of business," the Ninth Circuit held that national banks were citizens only of the "states in which their principal places of business are maintained." *Id.* at 162. Thus, as Judge Murphy eloquently pointed out:

> [A]t the time § 1348 was enacted in 1948: (1) the only Supreme Court decisions interpreting its predecessor statutes had ruled that a national bank's location should be considered on a comparable basis with state banks and corporations, and (2) the only circuit court decision had explained that a national banking association was located in the state of its principal place of business.

*WMR*, 653 F.3d at 716 (Murphy, J., dissenting). Wells Fargo has provided little that would persuade the Court to depart from this binding Ninth Circuit authority. *See Guinto*, 2011 WL 4738519, at *3 (following *American Surety* and holding that a national bank is a citizen of both the state where its main office is located and the state of its principal place of business).

Accordingly, the Court disagrees with the district court's determination in *Excelsior*. As set forth in Judge Murphy's dissent, which the Court finds persuasive, the concept of "principal place of business" was not new in 1948, when the current version of § 1348 was enacted; indeed, it had already been applied by the Ninth Circuit in *American Surety*, 133 F.2d at 162, to § 1348's

---

[7] The predecessor statute provided that "all national banking associations established under the laws of the United States shall, for the purpose of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located." Act of Mar. 3, 1911, § 24, 36 Stat. 1091-1093; *see also Wachovia*, 546 U.S. at 311 n.6.

1 predecessor statute. *See WMR*, 653 F.3d at 720 (Murphy, J., dissenting) (noting that the majority's
2 suggestion that the concept of "principal place of business" was unknown at the time of § 1348's
3 adoption was "simply inaccurate, since principal place of business citizenship was a creature of the
4 common law, and had been applied in *American Surety* to § 1348's predecessor statute"). Thus,
5 "[h]ad Congress intended to abrogate the principle of jurisdictional parity in 1958, it would have
6 been a 'noteworthy departure' from established jurisdictional principles, and it 'more likely than
7 not [ ] would have plainly stated such intent' if that had been its preferred outcome." *Id.* (quoting
8 *Am. Sur. Co.*, 133 F.2d at 162) (alterations in original).

9     B.    Post-*Wachovia* legislation and *Hertz Corp. v. Friend*

10     The Court also rejects Wells Fargo's argument that post-*Wachovia* legislation disfavors
11 inclusion of the "principal place of business" test into § 1348. On October 13, 2006, Congress
12 passed the Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, 120 Stat. 1966,
13 which, *inter alia*, clarified citizenship of federal savings associations for federal court jurisdiction:

> In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office.

12 U.S.C. § 1464(x). Wells Fargo contends that because Congress prescribed that a federal savings association is a citizen of only the state where its home office is located, a national bank—which is also federally chartered—should likewise be considered a citizen of only the state where its main office is located. This, however, assumes too much. Congress clearly knew how to indicate that a federally chartered institution is a citizen of only *one* state. By enacting a statute governing only federal savings associations, and leaving 28 U.S.C. § 1348 as it was, Congress is presumed to have kept the rules governing national banks as they were before. *Cf. Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and internal quotation marks omitted)). Had Congress intended a national bank to be a citizen of only the state in which it has its main office, it could have easily inserted the same language it used in § 1464(x) to limit the citizenship of a federal savings association. *See North Haven Bd. of Educ. v. Bell*, 456

1  U.S. 512, 521 (1982) ("After all, Congress easily could have substituted 'student' or 'beneficiary'
2  for the word 'person' if it had wished to restrict the scope of § 901(a).").

3  Wells Fargo also relies on the Supreme Court's recent decision in *Hertz Corp. v. Friend*,
4  130 S. Ct. 1181 (2010), to argue that the "principal place of business" test should not be read into
5  § 1348. However, in *Hertz*, the Supreme Court merely held that the term "principal place of
6  business" for purposes of federal diversity jurisdiction refers to "the place where a corporation's
7  officers direct, control, and coordinate the corporation's activities"—in other words, the
8  corporation's "nerve center." *Id.* at 1192. The Supreme Court noted that "in practice it should
9  normally be the place where the corporation maintains its headquarters—provided that the
10 headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and
11 not simply an office where the corporation holds its board meetings (for example, attended by
12 directors and officers who have traveled there for the occasion)." *Id.*

13 The holding in *Hertz* did nothing to abrogate the general principle that a corporation could
14 potentially be a citizen of two states. *See* 28 U.S.C. § 1332(c)(1). Similarly, applying the
15 principle of "jurisdictional parity" discussed above, while a national bank might generally have its
16 "nerve center" in the same state where its main office is located, that is not necessarily always the
17 case. *See Wachovia*, 546 U.S. at 317 n.9 ("The absence of a 'principal place of business' reference
18 in § 1348 may be of scant practical significance for, in almost every case, as in this one, the
19 location of a national bank's main office and of its principal place of business coincide."); *see also*
20 *Stewart*, 2011 WL 3323115, at *6 ("Mindful of the Supreme Court's discussion of Congress'
21 purpose in adopting § 1348, the court concludes that, to the extent *Hertz* has relevance, it suggests
22 that [*Wachovia*] should not [be] read to foreclose the possibility that a national bank is a citizen of
23 the state where it has its principal place of business."). Rather, the burden is on the party asserting
24 federal diversity jurisdiction—in this case, Wells Fargo—to demonstrate where the corporation's
25 "nerve center" is located. *See Hertz*, 130 S. Ct. at 1194. In this case, a careful review of Wells
26 Fargo's response to the Court's Order to Show Cause reveals that Wells Fargo does not deny its
27 principal place of business is in San Francisco, California. *Compare Mount*, 2008 WL 5046286, at
28 *1 (finding that Wells Fargo's principal place of business was in San Francisco, California (citing

1  cases)); Answer to Complaint in *Miles*, No. 06-cv-1991, ¶ 5 (Wells Fargo's answer to a complaint,
2  admitting that "Wells Fargo Bank, N.A. has its principal place of business in San Francisco, with
3  its main office in Sioux Falls, South Dakota"). Accordingly, Wells Fargo failed to carry its burden
4  of establishing diversity jurisdiction. *See Hertz*, 130 S. Ct. at 1194.

        C.        <u>The corporate citizenship rule</u>

6          Finally, Wells Fargo argues that the corporate citizenship rule of 28 U.S.C. § 1332(c)(1)
7  should only be applied to corporations. *See, e.g.*, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189
8  (1990) ("While the rule regarding the treatment of corporations as 'citizens' has become firmly
9  established, we have (with an exception to be discussed presently) just as firmly resisted extending
10 that treatment to other entities."); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894,
11 899 (9th Cir. 2006) (treating a limited liability corporation ("LLC") like a partnership for purposes
12 of diversity jurisdiction because such treatment "accords with the Supreme Court's consistent
13 refusal to extend the corporate citizenship rule to non-corporate entities, including those that share
14 some of the characteristics of corporations"). However, detrimental to Wells Fargo's argument is
15 the fact that a national bank *is* a corporation—just a federally charted one. *See, e.g.*, *Wachovia*,
16 546 U.S. at 306 (explaining that national banks are "*corporate entities* chartered not by any State,
17 but by the Comptroller of the Currency of the U.S. Treasury" (emphasis added)). Unlike an LLC
18 or a limited partnership, there is little distinguishing a national bank from a state bank or any other
19 corporation. Thus, there is no reason not to apply the corporate citizenship rule to a national bank
20 just as it would apply to a state bank. *See Horton*, 387 F.3d at 436; *Firstar*, 253 F.3d at 994.

21         Wells Fargo's remaining arguments are not persuasive.

## CONCLUSION

23         For the foregoing reasons, the Court concludes that Wells Fargo is a citizen of California.
24 Because complete diversity is lacking, the Court hereby **REMANDS** this action to state court.
25 The Clerk of Court is directed to remand the matter forthwith.

26     **IT IS SO ORDERED.**
27     **Date: November 3, 2011**                 _____
28                                            **IRMA E. GONZALEZ, Chief Judge**
                                           **United States District Court**